# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | |
|---|---|
| JOYCE VIAR-ROBINSON, | * |
| Plaintiff, | * |
| v. | * |
| | Civil Case No.: PWG-12-1794 |
| DUDLEY BEAUTY SALON, *et al.* | * |
| Defendants. | * |

## MEMORANDUM OPINION

This Memorandum Opinion disposes of Defendants Alfred D. Dudley, Sr. and Degreat, LLC's Motion for Summary Judgment, ECF No. 26, and supporting Memorandum, ECF No. 26-1; Plaintiff Joyce Viar-Robinson's Opposition, ECF No. 27; and Defendants' Reply, ECF No. 28.

Having reviewed the filings, I find that a hearing is unnecessary. *See* Loc. R. 105.6. For the reasons stated herein, Defendants' Motion is GRANTED in part and DENIED in part.

**I. FACTUAL BACKGROUND**

In reviewing a motion for summary judgment, the Court considers the facts in the light most favorable to the non-movant, drawing all justifiable inferences in that party's favor. *Ricci v. DeStefano*, 557 U.S. 557, 585–86 (U.S. 2009); *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 391–92 (4th Cir. 2009); *Dean v. Martinez*, 336 F. Supp. 2d 477, 480 (D. Md. 2004). Unless otherwise stated, this background is composed of undisputed facts. Where a dispute exists, I consider the facts in the light most favorable to Plaintiff. *See Ricci*, 557 U.S. at 585–86; *George & Co.*, 575 F.3d at 391–92; *Dean*, 336 F. Supp. 2d at 480.

Plaintiff has been a licensed nail technician in the state of Maryland since 1993. Viar-Robinson Dep. 13:20–14:8, Defs.' Mem. Ex. 4, ECF No. 26-2. Defendant Dudley is the operator of Dudley Beauty Salon in Oxon Hill, Maryland, which he owns through Defendant Degreat, LLC, a Maryland limited liability company of which Dudely is the sole member. Dudley Aff. ¶¶ 3–7, Defs.' Mem. Ex. 1, ECF No. 26-2. Dudley Beauty Salon is managed by Marcia Hinds. *Id.* ¶ 8.

In around February 2011, Hinds asked Plaintiff if she would like to work at Dudley Beauty Salon. Viar-Robinson Dep. 43:12–44:15. After some negotiations between Plaintiff and Hinds over Plaintiff's compensation, *id.* at 47:4–48:19, Plaintiff entered into discussions with Dudley and reached an oral agreement, *id.* at 48:20–13, which never was reduced to writing, *id.* at 45:1–5. Under that agreement, Plaintiff's customers would pay Dudley Beauty Salon, which would retain twenty-five percent of the proceeds of Plaintiff's work and give her the remaining seventy-five percent. *Id.* at 49:10–50:11. Plaintiff set her own hours, *id.* at 137:7–8, but at Hinds's request she generally worked on Wednesdays and Thursdays, *id.* at 86:18–87:10. Also at Hinds's request, Plaintiff sometimes came in on weekends to help with administrative work, *id.*, but the record does not reflect that Plaintiff requested or received compensation for this work. In addition to her existing clients, Plaintiff was allowed to take clients who walked into the salon, but she never serviced any walk-in clients. *Id.* at 49:19–40:1. Plaintiff testified that she set her own prices, *id.* at 138:11–18, and was responsible for keeping track of the money she was owed, which she recorded on slips of paper that she gave to Hinds, *id.* at 50:15–52:16. Plaintiff also kept track of the money she was owed on a pad, but Plaintiff testified that the pad was kept in the salon and never was returned to her when she retrieved her possessions from the

salon. *Id.* at 52:9–53:2. Plaintiff kept track of her appointments, but not her revenue, on a calendar book that she has retained. *Id.* at 53:3–11.

During this time, Plaintiff testified to frequent problems with her pay. Plaintiff said that she often received her pay in the form of checks "because they [the salon] didn't have the cash," and that "[a]ll of them bounced." *Id.* at 60:3–15. On at least two occasions, Plaintiff was charged a $32 fee for bounced checks. *Id.* at 65:1–66:19. Plaintiff was not reimbursed for these fees even though she asked to be. *Id.* at 70:3–10. She also testified that there were frequent disagreements over payment because Hinds would lose the slips representing money Plaintiff was owed, and that Plaintiff's "part would always be short," although often by less than $10. *Id.* at 61:19–62:17.

In August 2011, Plaintiff received a payment from Hinds that was significantly lower than she had expected and was told that Dudley unilaterally had decided to modify the agreed seventy-five/twenty-five split of revenues to a sixty/forty split. *Id.* at 70:17–71:10. Plaintiff believed that she was getting paid at a better rate than other people working at the salon because Plaintiff was paying for her own tools and equipment, and Plaintiff agreed to the sixty/forty split so long as she could subtract the cost of her equipment from her gross revenues before they were divided. *Id.* at 71:11–72:6.

In October 2011, Plaintiff's commission was reduced further, to a fifty/fifty split, *id.* at 73:3–20, and in November 2011, Plaintiff's commission was reduced even further, to a forty/sixty split in Dudley's favor, *id.* 74:21–75:3. Plaintiff began to investigate whether Dudley Beauty Salon was properly licensed and registered to do business. *Id.* at 77:4–80:20. After Plaintiff threatened to report what she believed to be noncompliance with various regulations, her compensation was increased to a fifty/fifty split again. *Id.* at 83:2–84:15.

Shortly thereafter, Dudley told Plaintiff that he wanted to charge her a fixed rent for her work station rather than charging her a percentage of her revenues. *Id.* at 84:20–85:1; *see also* Letter from Alfred Dudley to All Nail Technicians (Oct. 21, 2011), Defs.' Mem. Ex. 5, ECF No. 26-2. Although Plaintiff preferred paying rent to receiving commission, she believed also that Dudley was asking too high a rate of rent and refused to pay what he said he would charge. *Id.* at 86:9–88:17. The next day that Plaintiff came to work, she found that Hinds "had thrown [Plaintiff's] stuff in the trash cans in boxes just stacked up on top of [Plaintiff's work] station and pushed it up against the wall." *Id.* at 89:6–19. Plaintiff did not touch any of her possessions at that time, but noticed that "there's stuff missing already" and walked out. *Id.* at 90:7–17.

Plaintiff retrieved her belongings two weeks later, at which point she noticed "a lot of stuff missing." *Id.* at 94:15–6. Among the items missing were UV lights, dryers, a $200 stand, all of her polish, a $199 nail dryer, and about $500 worth of beauty care products. *Id.* at 95:7–101:17.[1]

On June 18, 2012, Plaintiff filed her Complaint, ECF No. 1, in this Court against Dudley's Beauty Salon, Alfred Dudley, Degreate, LLC,[2] and Dudley Beauty Center and Spa, alleging violation of the Fair Labor Standards Act ("FLSA"), violation of the Maryland Wage Payment and Collection Law ("MWPCL"), breach of contract, wrongful termination, fraud, fraudulently tendering checks with insufficient funds, two counts of misrepresentation that

---

[1] Because Plaintiff is entitled to the benefit of every favorable inference on summary judgment, it is not material whether she has documentation supporting the existence or cost of any of the possessions she claims were lost. Her testimony alone, from personal knowledge, clearly is more than just a "scintilla of evidence," and suffices to create an issue of fact.

[2] Although the Complaint names "Degreate, LLC" as a defendant, Defendants' papers consistently have identified the entity as "Degrat, LLC," which appears to be the proper name of the entity. *See, e.g.*, Entity Detail for Degrat, LLC, Defs.' Mem. Ex. 4, ECF No. 26-2.

simply repeat the "fraud" claim,[3] and conversion. Defendants Dudley Beauty Salon, Dudley, and Dudley Beauty Center and Spa moved to dismiss, Defs.' Mot. to Dismiss or, in the Alternative, for Summ. J., ECF No. 9, which was granted with respect to Dudley Beauty Salon and Dudley Beauty Center and Spa, but denied with respect to Dudley himself, Order, ECF No. 17.

Discovery has been completed, Status Report ¶ 1, ECF No. 25. On May 30, 2013, Defendants filed the instant Motion for Summary Judgment on all counts of the complaint. Plaintiff responded on June 20, and Defendants replied on June 24. The motion has been fully briefed and now is before me.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Celotex v. Catrett*, 477 U.S. 317 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby,*

---

[3] Plaintiff has alleged two counts of "fraud" and two identical counts of "misrepresentation." In alleging a single cause of action—albeit one arising from two sets of factual allegations—four times in succession, it is not clear that Plaintiff has thought through her actual theories of recovery or the relevant pleading requirements. *See EDI Precast, LLC v. Carnahan*, ---- F. Supp. 2d ----, 2013 WL 6064719, at *11–12 (D. Md. Nov. 12, 2013).

5

*Inc.*, 477 U.S. 242, 251 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.* "[U]nder Fed. R. Civ. P. 56, as amended in 2010, facts in support of or opposition to a motion for summary judgment need not *be* in admissible form; the requirement is that the party identify facts that *could be* put in admissible form." *Mallik v. Sebelius*, ---- F. Supp. 2d ----, 2013 WL 4559516, at *12 (D. Md. Aug. 28, 2013) (citing *Niagara Transformer Corp. v. Baldwin Techs., Inc.*, No. DKC-11-3415, 2013 WL 2919705, at *1 n.1 (D. Md. June 12, 2013)).

A "genuine" dispute of material fact is one where the conflicting evidence creates "fair doubt"; wholly speculative assertions do not create "fair doubt." *Cox v. Cnty. of Prince William*, 249 F.3d 295, 299 (4th Cir. 2001); *see also Miskin*, 107 F. Supp. 2d at 671. The substantive law governing the case determines what is material. *See Hoovan-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001). A fact that is not of consequence to the case, or is not relevant in light of the governing law, is not material. *Id.*; *see* Fed. R. Evid. 401 (defining relevance).

## III. DISCUSSION

### A. Fair Labor Standards Act and Maryland Wage Payment and Collection Law

Defendants seek summary judgment on Counts I and II, alleging violations of the FLSA and the MWPCL respectively, on the grounds that Plaintiff was an independent contractor, and not an employee. Defs.' Mem. 5. The FLSA defines an employee as "any individual employed by an employer," 29 U.S.C. § 203(e)(1), and to "'[e]mploy' includes to suffer or permit to work," 29 U.S.C. § 203(g). Though these definitions deliberately are broad, the FLSA recognizes a difference between employees, which it covers, and independent contractors, which it does not. *See Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 304 (4th Cir. 2006). To determine which category a worker falls into, "a court considers the 'economic realities' of the

6

relationship between the worker and the putative employer,' *id.* (citing *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 570 (10th Cir. 1994)), to determine "whether the worker 'is economically dependent on the business to which he renders service or is, as a matter of economic [reality], in business for himself," *id.* (alteration in original). To determine the economic reality of the relationship, courts apply a six-factor test that examines:

> 1) the degree of control which the putative employer has over the manner in which the work is performed;
> 2) the opportunities for profit or loss dependent upon the managerial skill of the worker;
> 3) the putative employee's investment in equipment or material;
> 4) the degree of skill required for the work;
> 5) the permanence of the working relationship; and
> 6) whether the service rendered is an integral part of the putative employer's business.

*Heath v. Perdue Farms, Inc.*, 87 F. Supp. 2d 452, 457 (D. Md. 2000). These factors first were discussed in *United States v. Silk*, 331 U.S. 704, 715 (1947), and therefore often are referred to as the *Silk* factors. "Rather than looking at one particular factor or applying these factors 'mechanically,' courts look at the totality of the circumstances in applying them." *Herman v. Mid-Atlantic Installation Servs., Inc.*, 164 F. Supp. 2d 667, 671 (D. Md. 2000).

### 1. Degree of Control

With respect to the first *Silk* factor, it is apparent from the record that Defendants exercised minimal control over Plaintiff. Plaintiff testified that she set her own hours, Viar-Robinson Dep. 137:7–8, set her own prices, *id.* at 138:11–18, and did her own advertising, *id.* at 138:19–139:15. She was not supervised by anyone, *id.* at 71:18–19. There is no suggestion that Plaintiff was told what work to do or for whom, *see Heath*, 87 F. Supp. 2d at 457–58 (workers were told what farms to go to, the times to work, and the method by which chickens are caught), or depended on Defendants for her day-to-day work, *see Butler v. PP & G, Inc.*, No. WMN-13-

430, 2013 WL 5964476, at *4 (D. Md. Nov. 7, 2013) (although exotic dancers enjoyed relative freedom, they were "entirely dependent on the Defendant to provide her with customers").

Plaintiff points to two supposedly disputed facts that she claims swing this factor in her favor: that her "work schedule was determined, at least in part, by Marcia Hind's needs," Pl.'s Opp'n 1, and that Plaintiff "serviced walk-in customers when she was not otherwise occupied," *id.* at 2. Neither of these assertions raises a genuine dispute of material fact. The fact that Plaintiff set her schedule based upon Hinds's needs does not undermine her testimony that she set her own hours—it merely suggests that she was considered of Hinds's needs in so doing. Viar-Robinson Dep. 137:6–8. Even the fact that Plaintiff came in on Saturdays does not raise an issue of material fact as to Defendants' level of control because Plaintiff, apparently, was not required to come in on Saturday and doing so does not appear to have been among her responsibilities as a nail technician. *See id.* at 86:21–87:10. And Plaintiff herself has admitted that even though she technically was allowed to service walk-ins, she never did so. *Id.* at 58:7. Thus Defendants exercised virtually no control over Plaintiff's client base, and this factor weighs in Defendants' favor.

### 2. Opportunity for Profit or Loss

Plaintiff was earning commissions from her work, but remained free to set her hours and to determine what to charge for her services—even when Defendants disagreed with what she was charging. *See* Viar-Robinson Dep. 54:15–18. If Plaintiff altered her hours, prices, quality of work, or the number of hours she worked, she was virtually guaranteed to be the primary person affected by any resultant gains or losses. *Cf. Herman*, 164 F. Supp. 2d at 674–75 ("The ability to generate more money based on skill and hard work denotes independent contractor status." (citation omitted)). The assertion in Plaintiff's brief that she "was required to be at work on a

regular schedule" is directly contradicted by Plaintiff's testimony that she "ma[de her] own hours." Viar-Robinson Dep. 137:7. This factor favors Defendants.

### 3. Investment in Equipment or Material

Plaintiff acknowledges that she purchased all of her own equipment and supplies. *See* Pl.'s Opp'n 5. The fact that she refused to purchase supplies from Dudley because she did not like the quality of the supplies he offered, *see id.*, is immaterial. This factor weighs in favor of Defendants.

### 4. Degree of Skill Required

Plaintiff's work requires a license from the State of Maryland, for which she had to attend six months of classes, obtain a degree, and pay a fee. Viar-Robinson Dep. 13:8–14:16. Plaintiff pays a fee to renew her license periodically and takes additional continuing education courses for her own benefit. *Id.* at 14:19–16:1. Plaintiff claims that these are relatively modest educational requirements that mean that a nail technician "is not a high skill position." Pl.'s Opp'n 5. However, not just anyone can show up and work as a nail technician; clearly it requires some level of specific training and qualifications. *Compare Butler*, 2013 WL 5964476, at *5 (noting that dancers were not required "to have previous certifications, education, or experience"), *with Herman*, 164 F. Supp. 2d at 675 ("Traditionally, carpenters, construction workers, electricians and similarly skilled tradesmen are considered independent contractors."). This factor favors Defendants.

### 5. Permanence of the Working Relationship

Plaintiff appears to concede this factor, noting that "Dudley's and Viar-Robinson did not have a long-term relationship as employer and employee, but approximately 14 months." Pl.'s Opp'n 5. Moreover, Plaintiff never had a written employment contract, Viar-Robinson Dep.

45:1–5, and there is no indication in the record that her employment was anything other than at will. This factor weighs in favor of Defendants.

### 6. Integral Nature of Services Rendered

Plaintiff appears to concede this factor as well, noting that "Dudley's is primarily a salon for hair, which additionally provided nail services after clients requested them." Pl.'s Opp'n 5. Further, Plaintiff acknowledged that Defendants did not advertise for nail services. Viar-Robinson Dep. 107:14–19. Thus this factor favors Defendants.

### 7. Plaintiff Was an Independent Contractor

After reviewing all of the *Silk* factors, it is apparent that Plaintiff was an independent contractor and not an employee of Defendants. Accordingly, Plaintiff cannot prevail on her FLSA claim as a matter of law.

"Maryland's Wage and Hour Law defines 'employ' in a similar manner" to the FLSA, and a similar test is applied. *See Heath*, 87 F. Supp. 2d at 457. Because Plaintiff is an independent contractor, she also cannot prevail on her MWPCL claims as a matter of law.

Accordingly, Defendants are entitled to summary judgment on Counts I and II.

### B. Count III: Breach of Contract

Defendants seek summary judgment on Plaintiff's claim for breach of contract on the grounds that "Plaintiff was paid all of [the] compensation that was due to her." Defs.' Mem. 8. Plaintiff contests this assertion and further claims that she is entitled to a seventy-five/twenty-five split of revenues—to which she and Dudley originally agreed—for the entire length of her relationship with Defendants. Neither party supports its position with citation to any case law.

"To prevail in an action for breach of contract, a plaintiff must prove that the defendant owed a contractual obligation and that the defendant breached that obligation." *Carroll Co. v.*

10

*Sherwin–Williams Co.*, 848 F. Supp. 2d 557, 563 (D. Md. 2012). Plaintiff has testified that she did not receive all of the compensation that she was owed and, in fact, that her "part would always be short." Viar-Robinson Dep. 62:2–8. At the very least, Defendants appear to concede that Plaintiff did not receive all of the compensation that she was owed, acknowledging that there were some discrepancies and arguing only that Plaintiff "would let any minor discrepancy of $5 or $10 slide." Defs.' Mem. 8. That the discrepancies were small does not rob them of legal significance, and the mere fact that Plaintiff chose not to raise an issue over minor discrepancies is not sufficient to find, on summary judgment, that she had waived her right to do so. "[W]hether subsequent conduct of the parties amounts to a modification or waiver of their contract is generally a question of fact to be decided by the trier of fact." *Univ. Nat'l Bank v. Wolfe*, 369 A.2d 570, 576 (Md. 1977).

Further, it appears from the record that Defendants repeatedly attempted to modify their agreement with Plaintiff by unilaterally altering its terms. For example, rather than seeking to modify the seventy-five/twenty-five split with Plaintiff to a sixty/forty split, Dudley simply retained an additional fifteen percent of Plaintiff's revenues after the fact. *See* Viar-Robinson Dep. 70:17–10. Assuming, without deciding, that Plaintiff agreed to a modification of the agreement by continuing to work for Defendants *after* that event, it is likely that the unilateral refusal to pay Plaintiff the agreed rate for work done prior to any modification constituted a breach of that agreement.

At the very least, there are remaining factual and legal disputes to be resolved and summary judgment on Count III therefore is not appropriate.

### C. Count IV: Wrongful Termination

Plaintiff's claim for "wrongful termination," in essence, appears to be an FLSA retaliation claim. *See* Compl. ¶ 73 ("Upon asserting her rights as to proper payment of wages Plaintiff was retaliated by having her station moved and subsequently fired.").

> A plaintiff asserting a prima facie claim of retaliation under the FLSA must show that (1) he engaged in an activity protected by the FLSA; (2) he suffered adverse action by the employer subsequent to or contemporaneous with such protected activity; and (3) a causal connection exists between the employee's activity and the employer's adverse action.

*Darveau v. Detecon, Inc.*, 515 F.3d 334, 340 (4th Cir. 2008). However, the FLSA only prohibits retaliation against an employee, *see* 29 U.S.C. § 215(a)(3) (prohibiting an employer "to discharge or in any other manner discriminate against *any employee* because such employee has" engaged in protected activity (emphasis added)), which Plaintiff is not. *See supra*.

Plaintiff also has not shown that she engaged in any protected activity under the FLSA. For an internal complaint to constitute protected activity, it must make clear that the complainant "is in fact making a complaint about an [FLSA] violation [and not] just letting off steam" about legally permissible working conditions. *Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325, 1334 (2011). Here, Plaintiff has not alleged that she ever stated a belief that her compensation arrangements violated the law. Rather, Plaintiff and Dudley simply had a dispute regarding her compensation, following which Plaintiff either quit or was terminated (it is not entirely clear which) because she was not satisfied with the terms of her continued employment. *See* Viar-Robinson Dep. 88:4–89:10 (explaining that Plaintiff refused to pay $125 in booth rent, following which Defendants removed Plaintiff's equipment from her work station).

Nor has Plaintiff shown that there is any basis for a wrongful discharge claim under Maryland state law, under which wrongful discharge claims have not been applied to

independent contracts and are seen as "exceptions to the employment-at-will doctrine which generally hold[s] that an at-will employee may be discharged at any time, with or without cause." *Cogan v. Harford Mem'l Hosp.*, 843 F. Supp. 1013, 1021–22 (D. Md. 1994). The mere fact that Plaintiff found the manner of her termination to be distasteful does not create a cognizable cause of action.

Further, Plaintiff appears to have conceded her wrongful termination claim. Accordingly, Plaintiff cannot succeed on Count IV as a matter of law and Defendants therefore are entitled to summary judgment on that count.

### D. Counts V, VI, VII, and VIII: Fraud and Misrepresentation

Counts V, VI, VII, and VIII of the Complaint appear to be a textbook example of overpleading, comprising multiple, redundant attempts to plead a single cause of action for fraud arising out of two different sets of facts. Compl. 10–13. Counts V and VII allege that Defendants fraudulently misrepresented that Degreate and/or Dudley's Beauty Salon were properly licensed and that Defendants withheld income taxes on behalf of Plaintiff. *Id.* at 10–12. Counts VI and VIII allege that Defendants fraudulently misrepresented that certain checks would not bounce. *Id.* at 11–13. I will consider these two sets of allegations in turn.[4]

To prevail on a claim for fraud or misrepresentation, Plaintiff must show, by clear and convincing evidence:

> (1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for

---

[4] It also is worth noting that, were Plaintiff's fraud claims being considered on a motion to dismiss, they likely would not have satisfied the pleading requirements of Fed. R. Civ. P. 9(b), which requires "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). Because much of this information now is in the record, I will consider these claims on their merits regardless.

the purpose of defrauding plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

*Gourdine v. Crews*, 955 A.2d 769, 791 (Md. 2008) (quoting *Md. Envtl. Trust v. Gaynor*, 803 A.2d 512, 516 (Md. 2002)).

With respect to Plaintiff's first set of allegations—that Defendants misrepresented the status of Dudley Beauty Salon and whether they were withholding taxes for Plaintiff—Plaintiff appears to have conceded the point insofar as she did not respond to it in her opposition to summary judgment. *See* Pl.'s Opp'n. Moreover, it is manifest that the facts in the record would not allow Plaintiff to prevail on a fraud claim on this basis. There is no indication that any of Plaintiff's actions relied on whether or not she believed Defendants' business to be licensed. Plaintiff also has not shown that Defendants made any representations that taxes would be withheld for Plaintiff, and she has acknowledged that she never filled out a W-2 form. Viar-Robinson Dep. 67:8–9.

With respect to Plaintiff's claim that Dudley fraudulently tendered checks that bounced for insufficient funds, Defendants appear to concede Plaintiff's legal position and argue only that "Plaintiff has been made whole for the two (2) checks that did not clear." Defs.' Mem. 11. However, Plaintiff has testified that she never was made whole for the $32 returned-check fees that she incurred. Viar-Robinson Dep. 70:3–16. This is a dispute over a material issue of fact and, therefore, summary judgment on this count is not appropriate.

Accordingly, Defendants are entitled to summary judgment on Counts V and VII, but not on Counts VI and VIII. But because Counts VI and VIII appear to be identical, Count VIII is stricken as redundant, and only Count VI remains unresolved. *See* Fed. R. Civ. P. 12(f).

### E. Count IX: Conversion[5]

"Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." Restatement (Second) of Torts § 222A(1). Here, Defendant argues that Plaintiff cannot prevail on her claim for conversion as a matter of law because she "cannot establish that Defendants exercised control over Plaintiff's items, which interfered with Plaintiff's rights to control them." Defs.' Mem. 12. However, Plaintiff has testified that, after she walked out of the salon following an argument with Dudley, she returned to find that Hinds had "thrown [Plaintiff's] stuff in the trash cans in boxes" and that items were missing. Viar-Robinson Dep. 89:6–90:11. Discarding Plaintiff's possessions as claimed would be a sufficient exercise of control to support a claim for conversion.

Defendants also argue that they lacked the requisite intent because "Ms. Hinds' actions of placing the items for pick-up indicate that Defendants never intended to control Plaintiff's items." Defs.' Mem. 12. Defendants do not allege, however, that Hinds acted unknowingly or inadvertently, only that she did not intend to control Plaintiff's property. Plaintiff has testified that, while her possessions were in the custody of Dudley's Beauty Salon, they were moved by Hinds and several items were taken or discarded. Viar-Robinson Dep. 89:6–90:11. If Hinds intentionally took or discarded those items—even if she was acting in good faith in so doing— she had the requisite intent for conversion. "The defendant may have the requisite intent even though he or she acted in good faith and lacked any consciousness of wrongdoing, as long as

---

[5] The Conversion claim actually is labeled "COUNT IV" in the Complaint, but it is the ninth count listed and the numbering is the clear result of a typographical error. Because there is only one conversion claim asserted, there is no ambiguity in referring to it as Count IX as Plaintiff clearly intended.

there was an intent to exert control over the property." *Darcars Motors of Silver Spring v. Borzym*, 841 A.2d 828, 836 (Md. 2004).

However, if Defendants intended to deny only that it was Hinds who exercised control, this denial may be an example of what long has been known as a "negative . . . pregnant with an affirmation," *McMechen v. Marman*, 8 G. & J. 57, 68 (Md. 1836), that is, a denial that implies that although the Defendants themselves did not convert anything, they may have neglected to prevent others from taking Plaintiff's belongings where there was a duty to do so. If so, Plaintiff's conversion claim actually may sound in breach of bailment, *Kimbrough v. Giant Food Inc.*, 339 A.2d 688, 696 (Md. 1975) (a bailee has a duty to use ordinary care to ensure that property subject to a bailment is returned to its owner), or in simple negligence, *see Pittway Corp v. Collins*, 973 A.2d 771, 788–89 (Md. 2009) (where defendant's negligence is a cause-in-fact of harm to plaintiff, there are circumstances in which an intervening act of another actor will not relieve defendant of liability). The technical failure to foresee and plead every conceivable basis for liability is no bar to Plaintiff's recovery in light of the liberal amendment rules of Fed. R. Civ. P. 15(b) (allowing for amendment of pleadings based on the production of, and objections to, evidence at trial).[6] Plaintiff has conducted discovery on her claim and has put Defendants on notice of the facts she alleges and the damages she seeks. It therefore is apparent that justice would require amending Plaintiff's complaint after the evidence has been received pursuant to Fed. R. Civ. P. 15(b) or, for the reasons discussed below, pursuant to Maryland Rule 3-341(a)–

---

[6] In fact, the tendency of plaintiffs' attorneys to attempt to plead a single factual and legal scenario in every conceivable way places a considerable burden on the courts. *See EDI Precast, LLC v. Carnahan*, ---- F. Supp. 2d ----, 2013 WL 6064719, at *11–12 (D. Md. Nov. 12, 2013). To penalize attorneys who take a more measured approach to pleading would be to penalize those who attempt to be measured in their pleading and encourage, if not require, attorneys to continue to burden the courts with overpleaded complaints.

(c), to match the evidence in this case rather than allow for the possibility that artful denials by a defendant could bar recovery for harms that have been alleged clearly.

At the very least, it is apparent that there is a factual dispute as to how Plaintiff's property went missing, and that dispute is sufficient to prevent summary judgment at this time.

## IV.    SUPPLEMENTAL JURISDICTION IN THIS CASE

Jurisdiction initially lay in this Court under 28 U.S.C. § 1331, because Plaintiff's FLSA claim presented a federal question. Defendants have prevailed on a substantial portion of their motion for summary judgment, and only three counts remain: Count III: Breach of Contract; Count VI: Fraud; and Count IX: Conversion. All of these claims arise under state law and fell under this Court's subject matter jurisdiction pursuant to 28 U.S.C. § 1367(a), which provides for supplemental jurisdiction over such claims. Based on Plaintiff's testimony, the remaining claims appear to add up to approximately $1,000 in total damages. *See* Viar-Robinson Dep. 62:14–17 (stating that most of the discrepancies in Plaintiff's pay were relatively small), 65:12–5 (stating that Plaintiff incurred two $32 returned check fees), 95:8–101:17 (valuing lost equipment at approximately $900).

Under 28 U.S.C. § 1367(c), "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . (3) the district court has dismissed all claims over which it has original jurisdiction." "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). The unsuitability of a federal court to resolve a state-law claim is even more apparent here, where the instant action appears to be one that would be more properly asserted as a small

17

claim in Maryland district court. *See* Md. Code, Cts. & Jud. Proc. § 4-405 (a small claim action is one "in which the amount claimed does not exceed $5,000").

Accordingly, I find that this Court no longer has sufficient interest over this state action to justify maintaining jurisdiction, and that in any event, federal court is no longer an efficient forum for this claim. Further, pursuant to 28 U.S.C. § 1367(d), the statute of limitations on Plaintiff's claims has been tolled while this case has been pending in this Court, and will remain tolled for an additional thirty days after the issuance of this Memorandum Opinion and its accompanying Order, so that Plaintiff will be able to bring those claims in district court if she so chooses. Therefore, Plaintiff's remaining counts will DISMISSED without prejudice.

## V. CONCLUSION

For the aforementioned reasons, Defendants' Motion for Summary Judgment is GRANTED with respect to Counts I, II, IV, V, and VII, and otherwise is DENIED;

Count VIII is STRICKEN as redundant pursuant to Fed. R. Civ. P. 12(f);

This case is DISMISSED without prejudice, pursuant to 28 U.S.C. § 1367(c); and

The Clerk is ordered to CLOSE this case.

A separate order shall issue.

Dated: December 4, 2013                                /S/
                                                       Paul W. Grimm
                                                       United States District Judge



dsy